# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Christine M. Arguello

Criminal Case No. 09-cr-00266-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. DAVID A. BANKS,
2. DEMETRIUS K. HARPER
   a/k/a Ken Harper,
3. GARY L. WALKER,
4. CLINTON A. STEWART
   a/k/a C. Alfred Stewart,
5. DAVID A. ZIRPOLO, and
6. KENDRICK BARNES,

    Defendants.

---

## ORDER REGARDING GOVERNMENT'S MOTION TO EXCLUDE TESTIMONY (DOC. # 323) AND GOVERNMENT'S MOTION IN LIMINE (DOC. # 430)

---

This matter is before the Court on the Government's "Motion to Exclude Testimony Pursuant to Fed. R. Evid. 702 and for Pre-Trial Hearing in Response to Defendants' Joint Expert Disclosure" (Doc. # 323), and the Government's Motion in Limine. (Doc. # 430.) In its Motion to Exclude Testimony, the Government moves the Court to exclude the vast majority of the planned testimony of Defendants' witness, Donald E. Vilfer, J.D., CFE, ACE, whom Defendants plan to tender as an expert in the areas of computer software, law enforcement investigative techniques, and the use of

computer software as it pertains to law enforcement.¹  (Doc. # 298.)  In its Motion in Limine, the Government moves the Court to exclude any references to alleged facts or events that occurred after February 2005, the end of the conduct charged in the Indictment.  The Government contends that the testimony of Mr. Vilfer and post-February 2005 references should be excluded as irrelevant under Fed. R. Evid. 402 or excluded as more prejudicial than probative under Fed. R. Evid. 403.²

On September 1, 2011, this Court held a Final Trial Preparation Conference ("FTPC").  At the FTPC, the Court informed the parties that although it would reserve ruling on both of the Government's motions, it would provide written guidance to the parties as to what it considers relevant evidence in this case.

Fed. R. Evid. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  In other words, "proffered evidence must, at minimum, advance the inquiry of some

---

¹ In its Motion to Exclude Testimony, the Government does not challenge the portion of Mr. Vilfer's opinion in which he asserts that the CILC Basic software was functional at the time of the search warrant. However, the Government reserved the right to make objections to this portion of Mr. Vilfer's opinions at trial.  (Doc. # 323 at 3-4.)

² The Government also contends that the opinions of Mr. Vilfer are inadmissible as expert testimony under Fed. R. Evid. 702.  The admission of expert testimony is left to the Court's discretion.  However, under Rule 702 and *Daubert* and its progeny, this Court must act as a gatekeeper to prevent the admission of irrelevant and unreliable expert evidence.  It appears to the Court that most, if not all, of Mr. Vilfer's opinions are likely irrelevant.  Thus, the Court need not determine at this juncture whether Mr. Vilfer's opinions satisfy the Rule 702 requirements.  If Mr. Vilfer's opinions become relevant based on developments at trial, the Government may raise its Rule 702 objections then.

consequential fact to be considered relevant and admissible." *United States v. Oldbear*, 568 F.3d 814, 820 (10th Cir. 2009). Evidence that is not relevant is not admissible. *See* Fed. R. Evid. 402. Assuming that the evidence is relevant, it still "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . .." Fed. R. Evid. 403. These circumstances arise when the proffered evidence suggests to the jury that it should render its findings on an improper basis, such as emotion, or when "circumstantial evidence would tend to sidetrack the jury into consideration of factual disputes only tangentially related to the facts at issue in the current case." *United States v. Jordan*, 485 F.3d 1214, 1218 (10th Cir. 2007) (quoting *United States v. McVeigh*, 153 F.3d 1166, 1191 (10th Cir. 1998)).

In this case, Defendants are charged with twenty-four counts of mail and wire fraud and conspiracy in connection therewith, and one count alleging criminal forfeiture, in connection with Defendants' operation of or affiliation with various payrolling companies that conducted business with staffing companies.[3] (Doc. # 1.) Mail fraud, wire fraud, and conspiracy are all specific intent crimes. *See United States v. Blair*, 54 F.3d 639, 642 (10th Cir. 1995) (conspiracy is a specific intent crime); *United States v. Lawrence*, 405 F.3d 888, 900 (10th Cir. 2005) (wire and mail fraud charges require a showing that a defendant acted with intent to defraud or intent to deceive). Thus, evidence relating to Defendants' intent to defraud or deceive the staffing companies

---

[3] Not all counts apply to all Defendants.

is certainly relevant. However, the vital question is what evidence Defendants may introduce to show a lack of intent to defraud or deceive the staffing companies.

Based on their briefing and argument at the FTPC, it appears that Defendants believe that the offered testimony and evidence at issue is relevant in two ways: (1) to rebut the Government's charge that Defendants did not have a viable software product or legitimate companies, and (2) as evidence that Defendants had a good-faith intent to repay the staffing companies with the proceeds from sales of their software products.

One of the ways that Defendants allegedly committed fraud was by inducing staffing companies to enter contractual arrangements with Defendants' companies by falsely representing that Defendants' companies "had large current or impending contracts with one or more large government agencies . . .."[4] (Doc. # 1 at 6.) During the FTPC, the Government stated that representatives of the staffing companies would testify at trial that one or more of the Defendants told them either that they already had contracts or had impending contracts with law enforcement agencies. As the Court indicated at the FTPC, evidence that those statements were not actually made, or that Defendants had contracts or were on the verge of signing contracts, would appear highly relevant to Defendants' case. However, the Government's motions do not seek

---

[4] The Indictment also alleges that Defendants committed fraud by approving and submitting time reporting cards containing false statements about the number of hours worked by the employees, the times of day during which employees worked, and/or the nature of the work performed by the employees. (Doc. # 1, ¶ 7.) The viability of Defendants' software and the legitimacy of their companies has no apparent relevance to whether Defendants committed these acts of fraud (and Defendants do not appear to argue that this evidence would be relevant to these alleged fraudulent acts).

to exclude evidence of this kind; rather, the Government seeks to exclude evidence related to the viability of Defendants' software and the legitimacy of their companies after February of 2005, the end of the conduct charged in the Indictment.[5]

At the FTPC, Defendants argued that Mr. Vilfer's opinions, relating to both pre- and post-February 2005 viability, are relevant to demonstrate the viability of their software and the legitimacy of their companies. However, the Government stated that it did not intend to elicit any testimony from the representatives of the staffing companies about their views on the viability of Defendants' software or the legitimacy of their companies. Thus, it would appear that the viability of the software and/or the legitimacy of Defendants' companies are not issues relevant to the Government's case.

However, the Court has reviewed the Indictment and notes that it includes allegations that Defendants used a variety of tactics to prevent staffing companies from discovering that Defendants did not have the ability to repay the staffing companies. (Doc. # 1 at ¶ 8.) Although this allegation in the Indictment was not addressed by the parties at the Final Trial Preparation Conference, it appears to the Court that should the Government assert that defendants did not have the ability to repay the staffing companies, evidence and testimony concerning the viability of Defendants' software and the legitimacy of their companies may be relevant to rebutting these assertions.

---

[5] Although the Government's Motion in Limine seeks to exclude all references to alleged facts or events that occurred after February, 2005, all such references appear to pertain to the viability of Defendants' software and their efforts to market the product. Similarly, Mr. Vilfer's opinions concern the viability and market demand for Defendants' software as it existed in 2005 and in 2010. The Court finds that the viability and market demand for Defendants' software as existed in 2010 has no apparent relevance to the allegations contained in the Indictment.

To the extent that the Government introduces evidence questioning the viability of Defendants' software, the legitimacy of their companies, or the ability to repay the staffing companies, then the Government risks "opening the door" and making relevant testimony and evidence proffered by the Defendants to rebut such evidence, provided such evidence is reasonably related to the time frame around which the conduct alleged in the indictment occurred, *i.e.*, at or about, or prior to February of 2005. However, testimony and evidence that Defendants' had a viable software product or owned a legitimate company in 2010 would not be relevant to the issues in this case.

Defendants also appear to suggest that Mr. Vilfer's opinions and post-February 2005 references are relevant to show their good-faith intent to repay the staffing companies by selling their software to law enforcement agencies. As the Court noted at the Final Trial Preparation Conference, it is well-established that, where fraud is alleged as a result of a defendant's knowing provision of materially false information in order to obtain something of value, as in the instant case, "it is irrelevant whether or not [the defendant] intended to repay [the funds] or was capable of repaying [them]." *United States v. Hollis*, 971 F.2d 1441, 1452 (10th Cir. 1992); *see also United States v. Schuler*, 458 F.3d 1148, 1153 (10th Cir. 2006) (finding victims' ability to obtain refunds irrelevant in light of the defendant's intent to defraud); *United States v. Kennedy*, 64 F.3d 1465, 1478 (10th Cir. 1995) ("[t]he 'completion' of both wire and mail fraud occurs when any wiring or mailing is used in execution of a scheme; there is no requirement that the scheme actually defraud a victim into investing money for the crime to be

complete); *United States v. Stewart*, 872 F.2d 957, 960-61 (10th Cir. 1989) (stating that the mail fraud "does not require successful completion of the scheme to defraud"; the mail fraud statute "prohibits schemes intended to deprive victims of money or property."); *United States v. McKinney*, 822 F.2d 946, 949 (10th Cir. 1987) (stating that defendant's subsequent offer of repayment does not negate an earlier intent to defraud). Therefore, whether Defendants intended to eventually make the victim staffing companies whole is entirely irrelevant and likely to confuse the jury.

In conclusion, although the Court finds it premature to rule on the Government's Motions (Doc. ## 323, 430) in advance of trial, the testimony and evidence relating to the viability of Defendants' software or the legitimacy of their companies appears irrelevant unless the Government opens the door as described above, at which time this Court would deem relevant evidence offered by Defendants in rebuttal which reasonably relates to the dates during which the fraudulent activity allegedly occurred.

DATED: September __09__, 2011

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge